IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

REGINA JOHNSON,                        )
                                       )
           Plaintiff,                  )
                                       )
v.                                     )    1:04-CV-00285-B
                                       )       WO
JO ANNE B. BARNHART,                   )
COMMISSIONER OF SOCIAL SECURITY,       )
                                       )
           Defendant.                  )

## MEMORANDUM OPINION AND ORDER

Following administrative denials of applications for disability insurance benefits under Title II of the Social Security Act , 42 U.S.C. §§ 401 et seq., and supplemental security income under Title XVI, 42 U.S.C. §§ 1381 et seq., Regina Johnson ("Johnson") received a requested hearing before an administrative law judge ("ALJ"), who rendered an unfavorable decision on May 1, 2003. Because the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 636 (c), and for reasons herein explained,  the court concludes that the Commissioner's decision should be REVERSED and this case REMANDED for further administrative consideration.

## I.   STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is limited.    The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). The Commissioner's decision must be considered conclusive "if it is supported by substantial evidence and the correct legal standards were

applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), *citing Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is less than a preponderance; instead, it is considered such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Crawford v. Commissioner of Soc. Sec.*, 363 F.2d 1155, 1158-59 (11th Cir. 2004); *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998), *Richardson v. Perales,* 402 U.S. 389, 401 (1971). Because substantial evidence is "more than a scintilla", *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987), it "must do more than merely create a suspicion of the existence of the fact to be established." *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988). A decision is not based on substantial evidence if it focuses on one aspect of the evidence while disregarding the contrary evidence. *McCruter v. Bowen*, 791 F. 2d 1544, 1548 (11th Cir. 1986).

The court must examine the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The court will reverse a Commissioner's decision, however, if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health & Human Servs.*, 21 F. 3d 1064, 1066 (11th Cir. 1994).

## II.   ADMINISTRATIVE FINDINGS

Johnson, age 38 at the time of the hearing on March 11, 2003,  has not engaged in substantial gainful work activity since October 1, 1999, the alleged onset date of disability. While the   ALJ found that Johnson has severe impairments –  obesity, osteoarthritis, diabetes, hypertension, sleep apnea and history of mitral valve syndrome – he  concluded that these

"medically determinable impairments  do not meet or medically equal one of the listed impairments" in 20 C.F.R. Part 404, Appendix 1 to Subpart P.   Finding Johnson's "allegations regarding her limitations ...not totally credible", the ALJ found that she retained the  residual functional capacity ("RFC") to perform past relevant work  as a sewing machine operator, and is thus not disabled.[1]

## III.   ISSUES

Johnson challenges the ALJ's analysis at step four of the five-step sequential evaluation process.[2]  She contends *first* that the ALJ's finding that she has the RFC to return to "light work" as a sewing machine operator is unsupported by substantial evidence to the extent that the finding ignores (a) evidence of her inability to meet the physical exertional demands for such "light work",

---

[1]R. 18-21.

[2]The sequential evaluation process is described succinctly  in *Davis v. Shalala*, 985 F. 2d 528, 532 (11th Cir. 1993):

In *step one* of the sequential evaluation, the Secretary determines only *whether a claimant is engaged in substantial, gainful activity* and gives no consideration to a claimant's alleged disabilities either separately or in combination.  *See* 20 C.F.R. §416.923.  In sequential evaluation *step two, the Secretary determines whether a claimant has a "severe" impairment* or combination of impairments that causes more than a minimal limitation on a claimant's ability to function.  *See* 20 C.F.R. §416.2( c ). If the Secretary finds, at step two, "a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process."  *See* 20 C.F.R. §416.923.  In sequential evaluation *step three*, the Secretary determines *whether a claimant's impairment meets or equals a disability described in the Listing of Impairments* which describes impairments that are considered severe enough to prevent a person from doing any gainful activity.  *See* 20 C.F.R. §§416.920(d), 416.925(a).  Finally, in sequential evaluation *steps four and five, the Secretary makes an assessment of a claimant's residual functional capacity*, in light of a claimant's past work, experience, age, and education.  *See* 20 C.F.R. §§416.920(e) and 416.920(f). (emphasis added); *accord, Phillips v. Barnhart*, 357 F. 3d 1232, 1237 (11th Cir. 2004);  *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

and  (b) her treating doctor's opinion that she cannot perform an eight-hour work day.   Johnson

claims a second error in the ALJ's failure – with respect to his assessment of her ability to perform

past work – to analyze the effect of her obesity in combination with other severe impairments.

Each issue  relates to the ultimate inquiry on judicial review:   whether the Commissioner's

disability decision is supported by proper legal standards and by substantial  evidence.  *See Bridges*

*v. Bowen*, 815 F.2d 672 (11th Cir. 1987).

## IV.   DISCUSSION

### A.      Assessment of Residual Functional Capacity

The ALJ determined that Johnson can perform her "past relevant work as a sewing machine

operator"  – classified by the vocational expert as "light in exertion, semiskilled work" – because

she retains the RFC

> to lift and/or carry 20 pounds occasionally, 10 pounds frequently.  She can stand  or
> walk for 2 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday. She
> may occasionally stoop, kneel or crouch and may never climb ladders or crawl.  She
> must avoid heights, hazardous machinery, temperature extremes and concentrated
> exposures to fumes, dust, gases, smoke and chemicals and humidity.[3]

#### 1.   "Light Work" exertional demands

Johnson argues initially an inconsistency between the ALJ's finding that she *"can stand  or*

*walk for 2 hours in an 8-hour workday*" and the exertional demands for the kind of "light work"

either "usually performed" or "actually performed" by her as a sewing machine operator.  Citing

SSR 83-12 and SSR 96-9p, and 20 C.F.R.§ 404.1567(b)(2001), she explains:

> "Light" work requires standing and/or walking for a total of about six hours in an
> eight-hour day.   "Light" work requires the ability to stand and/or walk for
> "prolonged" periods, i.e., at about two-hour intervals.   When a claimant can do

_____

[3]R. 19 -21.

4

"light" work, she is also considered to be able to do all the demands of "sedentary" work unless there is an additional limitation impacting on the claimant's ability to do sedentary work. "Sedentary" work requires sitting for a total of about six hours in an eight-hour day and sitting for prolonged periods, i.e., at two-hour intervals.[4]

The Commissioner concedes that the "full range of light work requires standing or walking, off and on, for a total of approximately six hours in an eight-hour workday" but maintains that "work is also classified as light when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work."[5] Moreover, the Commissioner argues that the ALJ relied properly on the vocational expert's classification of Johnson's past job as a sewing machine operator as "light work" as well as his testimony of her RFC to resume that work.

The evidentiary record supports Johnson's complaint of error in the ALJ's failure to reconcile his finding that she is able to walk or stand for only two hours of an eight-hour workday with the vocational expert's opinion of her ability to perform light work within a definition which demands at least six hours for standing or walking. As reported by the ALJ:

> The impartial vocational expert was asked to identify jobs for an individual of the claimant's age, educational background, past relevant work experience and residual functional capacity. The expert witness testified that an individual with the same limitations as described by the claimant could return to her past work as a sewing

---

[4]*Plaintiff's Memorandum in Opposition to the Commissioner's Decision* ("Pl.'s Br.") at 9 (Doc. 12, Sept. 23 2004).

[5]*Memorandum in Support of the Commissioner's Decision* ("Def.'s Br.") at 5 (Doc.15, Nov. 24, 2004), *citing* SSR 83-10; 20 C.F.R. §§ 404.1567 and 416.967. Urging the court to "reject the Commissioner's post-hoc argument", Johnson responds that the Commissioner "offers no vocational expert testimony or other reliable vocational data to support its assertion." SSR 83-10, Johnson insists, "clearly states that the essential difference between sedentary and light exertional work is not the lifting requirements, but the need to do a "...good deal of walking or standing." *Pl.'s Reply Br.* (Doc.17, Dec. 6, 2004) at 2.

machine operator as performed by the claimant.  The Administrative Law Judge accepts the testimony of the vocational expert as an accurate and authoritative assessment of the kinds and numbers of jobs available in the national economy and as being consistent with information contained in the Dictionary of Occupational Titles to the extent of the information provided therein. [6]

Scrutiny of the entire testimony by Vocational Expert Charles Robert Whitsen confirms his classification of her past work:  "as a collar setter, machine operator ... [w]ould be classified in the Dictionary of Occupational Titles as a light and entry level, semiskilled work."  The ALJ then posed this first  hypothetical before inquiring if a "person with those abilities and limitations [would] be able to perform the past work:"

> Assume a person, 35 – 38 years of age with a GED.  Assume in the first hypothetical the person could lift or carry 20 pounds occasionally, ten pounds frequently, *could stand or walk two hours out of an eight-hour day, sit six hours,* could never climb ladders or ropes, could occasionally stoop, kneel, crouch, never crawl, would have to avoid heights, hazardous machinery, temperature extremes, have to avoid concentrated exposure to fumes, dust, gases, smoke and chemicals, and avoid concentrated humidity. [7]

The VE did not embellish his  response – "*Yes, sir.  They would be able to."* – with any explanation for the fact that the DOT's "light work" classification for Johnson's past work contemplates the ability to stand or walk for considerably more than the "*two hours out of an eight-hour day*" incorporated in the ALJ's hypothetical.    Nor did the ALJ make any further inquiry to elicit an explanation or to undermine the exertional requirements of DOT's classifications; instead, the VE responded in the affirmative to the ALJ's pointed inquiry,  "And is your testimony consistent

---

[6]R.20.

[7]R.284 (emphasis supplied).

with the DOT."[8]

Because the exertional demands for walking and standing as specified in the ALJ's hypothetical indisputably conflict with the same demands for "light work" within the DOT,[9] the VE's opinion that Johnson can return to her past work cannot constitute substantial evidence to support the ALJ's similar finding.    Neither is the ALJ's finding justified in this case by his "administrative judicial notice of the obsolescence of the DOT, its omission of a provision for a sit/stand option, postural limitations and other exertional and non-exertional limitations detracting from a full range of work activity at a particular exertional level."[10]    Such judicial notice is inadequate because the ALJ failed to develop the evidentiary record to establish either that Johnson actually performed "light work" as a sewing machine operator or that this work is usually performed with exertional limitations which provide a sit/stand option or may be less demanding than the DOT-

_____

[8]R.285.

[9]20 C.F.R. § 404.1567 advises, in pertinent parts:

> To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy.  These terms have the same meaning as they have in the Dictionary of Occupational Titles, published by the Department of Labor.  In making disability determinations under this subpart, we use the following definitions:
>
> (b) Light work.   Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, *a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling or arm or leg controls.* To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. (emphasis supplied).

[10]R. 20, *citing* SSR 00-4p.

specified requirements.

In fact, the record reveals evidence to the contrary.  For example, the state disability specialist who administered to Johnson a vocational analysis certified that "the limitations outlined in the RFC/MRFC dated April 11, 2002, are consistent with the physical/mental requirements of the claimant's past relevant work as a sewing machine operator *as the job was actually performed*; examination confirms that Johnson's past work required her to stand or walk more than the "two hours in an eight-hour work day" specified in the ALJ's hypothetical.[11] Additionally, Johnson's pertinent testimony[12] and her work- history report[13] also suggest  that the ALJ's hypothetical to the VE properly restricted workday walking and standing in a manner which falls outside the exertional

---

[11]R.66 (emphasis supplied); on the RFC assessment, the exertional limitations for Johnson's past work include, *inter alia:*

> *3.* Stand and/or walk (with normal breaks) for a total of --about 6 hours in an 8-hour workday;
> *4.* Sit (with normal breaks) for a total of --about 6 hours in an 8-hour workday.
> *5.* Push and/or pull (including operation of hand and/or foot controls.) -- unlimited, other than as shown for lift and/or carry

(R. 231).

[12]
> *Q.* What problem do you have sitting?
> *A.* My lower back.  Pain from my neck to my back, the lower part of my back, just up above  on my buttocks.  I have to sit to the side.  I can't sit just straight down.
> (R. 272).
> *Q.*  – you have a lot of trouble walking short distances?
> *A.*  Yes, it is.
> (R. 274).
> In the "Physical Activities Questionnaire" completed on February 7, 2002, Johnson declared: "I can't stand because of swelling and knees pain because of injuries.  I have asthma so I'm very short breath (sic).  My hurt especially when I try on concrete ..." (R. 54).

[13]R. 63 (including Johnson's declaration that she walked 2 hours, stood 2 hours, and sat 5 hours during the course of an 8-hour work day until she "started hurting".

requirements of DOT-classified "light work."  In sum, the ALJ's finding that Johnson can perform her past work as a sewing machine operator is unsupported by substantial evidence to the extent of his reliance on an opinion by the vocational expert which is inconsistent with the evidence of the exertional demands of that past work.

### 2.   Medical Opinions of  RFC for exertional demands of light work

To the extent that the ALJ relies on medical opinions for his assessment of Johnson's RFC to resume work as a sewing machine operator, Johnson contends that the ALJ erred by  ignoring the opinion of her  treating physician, Dr. Karen Mockler, that she "could not perform an eight hour work day",[14] and by instead according more weight  to the opinion of the non-examining, state agency's physician.  In response to Johnson's contention that the ALJ ignored Dr. Mockler's opinion of her RFC to work a full work day, the Commissioner maintains that the ALJ properly "did not give controlling weight" to this opinion because he "properly evaluated Johnson's RFC in light of the opinions of treating and non-examining medical professionals."[15]

### a.  Consideration of Treating Physician's Opinions

The ALJ duly noted Dr. Mockler's assessment of Johnson's exertional limitations on her "physical capacity evaluation" completed on June 24, 2002, but in dispute is whether his assessment of her RFC ignored Dr. Mockler's stated opinion that  Johnson "can lift and carry less than 10 pounds frequently or occasionally, *stand/walk for less than one hour at a time or for two hours in an 8-hour workday and sit for less than one hour at a time or for four hours in an 8-hour*

---

[14]*Pl.'s Br.* at 11, citing R. at 235-236 and 16-17.

[15]*Def.'s Br.* at 7.

9

*workday.*"[16]

In making his determination "whether [Johnson] retains the residual functional capacity to perform the requirements of her past relevant work or other work existing in significant numbers in the national economy,"  the ALJ acknowledged  his duty to "consider any medical opinions, ... which reflect judgments about the nature and severity of the impairments and resulting limitations."[17]  In the three paragraphs which follow, the ALJ does incorporate in his formulated RFC  Dr. Mockler's opinion that Johnson "can stand or walk for 2 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday."( R. 19).  While conceding that the ALJ  did not ignore entirely the treating doctor's opinion of her exertional limitations;  the gist of Johnson's claimed error, however, is that "[a]bsent the ability to perform an eight hour work day, substantial evidence cannot support a finding of not disabled."[18]

The administrative regulation Johnson cites as support for this specification of ALJ error is SSR  96-8p, which provides in pertinent part:

> Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.
> ***
>
> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945  Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

---

[16]R. 17 (emphasis supplied).  The ALJ correctly reported these limitations indicated by Dr. Mockler on the "Physical Capacities Evaluation and Pain Form" (R. 238-242).

[17]R.19.

[18]*Pl.'s Br.* at 11, citing SSR 96-8p.

In assessing Johnson's RFC, the ALJ identified some of her functional limitations as determined by her treating doctor but omitted altogether the treating doctor's additionally expressed opinions relevant to the functions in paragraph (b) of 20 CFR 404.1545.[19]   On the same "physical capacities evaluation & pain form" which provided support for the ALJ's assessment that Johnson "can stand or walk for 2 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday",  Dr. Mockler noted  Johnson's need for "two hours of bed rest or sitting with feet/leg elevated in 8 hr.day." Also indicated but not identified by the ALJ is this doctor's opinion that Johnson's postural limitations  include that she is (a) "never able"  to squat, crawl, climb, or reach, and (b) only "occasionally (34% of 8 hrs.)" able to bend.[20]

In the second  hypothetical posed  to the vocational expert, the ALJ did assume a claimant's physical inability to complete an eight hour work day, and his colloquy with the VE indicates an awareness by both that RFC measures a claimant's ability to work 8 hours a day.[21]   Nonetheless, the ALJ's finding that Johnson has the RFC for light work does not incorporate, or  attempt to discredit, explain, or otherwise reconcile, any of the these exertional limitations identified by Dr. Mockler and relied on by Johnson to demonstrate her inability to sustain an eight-hour work day.[22]

_____

[19]The referenced paragraph (b)  of 20 CFR 404.1545 involves the physical abilities such as stand, walk, push, pull, lift, carry, stoop.

[20]R.239.

[21]*Q:* If I change my hypothetical, the person would be limited to lifting and carrying only ten pounds, would be unable to complete an eight-hour day or a 40 hour workweek, again with the other limitations, would I be correct, there would be no jobs the person could perform?
*A:* That would be correct, yes, sir.
(R. 284-285).

[22]Arguably, the following statement in the ALJ's decision evinces his reasons for rejecting
(continued...)

11

Nor did the ALJ attempt to elicit any testimony from Johnson pertinent to the exertional limitations specified by her treating doctor but not identified in his assessment of her RFC.   These omissions constitute error.[23]

In addition to failing to identify all exertional limitations imposed by Dr. Mockler, the ALJ's decision does not take into account this treating doctor's clinical assessment of Johnson's disabling pain, reported on June 24, 2002:

> • *To what extent is pain of significance in the treatment of this patient?*   Pain is present to such an extent as to be distracting to adequate performance of daily activities or work.

---

[22](...continued)
the treating doctor's opinion:

> The Administrative Law Judge rejects the *assessment by claimant's treating physician. Dr. Mockler*, as claimant has been non-compliant in her instructions to lose weight and exercise and continues to gain weight (Exhibit 11F)

(R. 20, emphasis supplied).  Read in context with the rest of the paragraph, the court cannot discern whether the referenced assessment recognizes *all* of the limitations indicated by Dr. Mockler to suggest that Johnson cannot perform light work or only the limitations reported by the ALJ.

[23]*See* SSR 96-8p ( "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion...The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved....The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.");  *SSR 96-5p* ("A medical source's statement about what an individual can still do is medical opinion evidence that an adjudicator must consider together with all of the other  relevant evidence...when assessing an individual's RFC....Adjudicators must weigh medical source statements under the rules set out in 20 CFR 404.1527 and 416.927, providing appropriate explanations for accepting or rejecting such opinions."); *see also Cowart v. Schweiker*, 662 F. 2d 731, 735 (11th Cir. 1981)(holding the ALJ has duty to clarify the weight given each item of evidence in the record and the reasons for his decision);  *Gibson v. Heckler*, 779 F. 2d 619, 623 (11th Cir. 1986)(holding the ALJ should comment on the weight he credits all testimony).

*• To what extent will physical activity, such as walking, standing, bending, stooping, moving of extremities, etc., increase the degree of pain experienced by this patient?* Greatly increased pain add to such a degree as to cause distraction from task or total abandonment of tasks.

*• In your best judgement to what extent will the pain ... impact upon this patient's ability to perform his/her previous work?* Pain... can be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, etc.[24]

Reporting that she "believe[s] [Johnson's complaints of pain]", Dr. Mockler identified "osteoarthritis" as a condition which supplied "objective evidence which could reasonably be expected to cause this degree of pain."[25] Because the ALJ found Johnson's allegations of disabling pain not credible, he is bound both to articulate his reasons for ignoring the treating physician's contrary opinion and to buttress his own finding with evidence.[26]

Remand is thus dictated arising from the ALJ's failure (a) to identify and to evaluate *all* the exertional limitations specified by Johnson's treating doctor as affecting her functional ability to work on a regular and continuing basis in her past work or in similarly classified light work, and (b) to identify, and to articulate good cause for ignoring, the treating physician's opinion of

---

[24]R. 241-242.

[25]R. 240. Contrary to Johnson's claim, Dr. Mockler does not pinpoint Johnson's obesity as an objective cause fo her disabling pain. *See Pl.'s Br.* at 12 ("The most significant objective finding repeated over and over in the medical records in the Plaintiff's height and weight.").

[26]As reason for finding her allegations "not credible to the extent that she is precluded from performing exertional work-related activities", the ALJ cited as an inconsistency the fact that "she drew unemployment... after she was laid off from her past job..." (R. 19); *see* R. 286 ("When you draw unemployment from the State of Alabama are you required to tell the state that you're able and willing to work? , , , So she told the State of Alabama she was able and willing to work, at the same time she's telling me that she was unable to work...") Given the treating doctor's opinions on this subject, supported by objective evidence, the ALJ may not dismiss such evidence by reference to this perceived inconsistency in the claimant's application for unemployment compensation. The ALJ also found Johnson's complaints of disabling pain not credible because of her failure to lose weight, and that insufficient finding is analyzed *infra.*

13

Johnson's disabling pain.[27]

### b. Weight Accorded Opinion of Non-Examining Agency Physician

Johnson also contends that the "ALJ erred when he gave the non-examining medical advisory's opinion more weight than the treating sources."[28]   On the question of Johnson's RFC to perform light work, however, the Commissioner is correct that the ALJ did not give controlling weight to the agency physician's opinion; the pertinent section of the decision follows:

> My conclusion that the claimant is not disabled is further supported by the opinions of the State Agency physician, Dr. Lassiter, who found that the claimant could perform light work (Exhibit 9F).  As that of a non-examining physician his opinion is not entitled to controlling weight, but must be considered and weighed as that of a highly qualified physician who is an expert in the evaluation of the medical issues in disability claims under the Social Security Act (SSR 96-6p).  Accordingly, the Administrate Law Judge notes that after claimant was laid off from her past job as a sewing machine operator she drew unemployment and got her GED.[29]

---

[27]Assessment of RFC falls squarely within the ALJ's province, but it must be based upon all relevant evidence of the claimant's ability to work despite impairments.  *Lewis v. Callahan,* 125 F. 3d 1436, 1440 (11th Cir. 1997).  "[A]djudicators must always carefully consider medical source opinions about any issue, including opinions about issues reserved to the Commissioner......If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."  SSR 96-5p.  Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Phillips v. Barnhart,* 357 F. 3d 1232, 1241(11th Cir. 2004); *Lewis v.* Callahan, 125 F.3d 1436, 1439 - 1441 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); see also 20 C.F.R. § 404.1527 (d).  When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record a whole; ( 5) specialization in the medical issues at issue; (6) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527 (d).

[28]*Pl.'s Br.* at 12.

[29]R.20.

Because the court concludes that remand is necessary because the ALJ has not articulated his consideration of *all* relevant opinions of Johnson's treating doctor with respect to exertional limitations which undermine her ability to perform light work, this record does not permit any meaningful comparison of the weights accorded to the treating physician's and the agency physician's opinions.[30]  It is clear, however, that the opinion of a state agency non-examining physician is insufficient alone either to constitute substantial evidence supporting the ALJ's findings or to provide the good cause necessary to reject the treating physician's assessment.[31] To the extent that Johnson's contention implicates the weight accorded to the medical opinions on the question of Johnson's obesity as a severe impairment precluding her from performing light work, the court considers it in discussing the related issue arising from the ALJ's consideration of Johnson's obesity.

---

[30]It is noteworthy that Dr. Lassiter's April 2002 assessment of Johnson's RFC (R.230-235; 69-71) necessarily did not take into account either Dr. Mockler's August 2002 report or Dr. Mockler's Physical Capacities Evaluation & Pain assessments dated June 24, 2002.  Dr. Lassiter stated Johnson's primary diagnosis as *diabetes mellitus* and *obesity* as her secondary diagnosis; not referenced by him is the diagnosis of osteoarthritis or chronic pain indicated by Dr. Mockler, and the examining consultant, Dr. Banner.

[31]The ALJ is authorized to consider the findings of a state agency medical consultant and to credit them where no treating or examining physician has asserted a supportable, contrary view. See 20 C.F.R. §404.1527 (f)(2); see also SSR 96-6p ("Administrative law judges and the Appeals Council are not bound by findings made by State Agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.").  However, the opinion of a non-examining reviewing physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *Swindle v. Sullivan*, 914 F. 2d 222, 226 (11th Cir. 1990); *Broughton v. Heckler*, 776 F. 2d 960, 962 (11th Cir. 1985)(The opinion of a non-examining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician.).

**B.      Consideration of Effect of "Obesity"**

Based on Johnson's testimony, the ALJ reported her weight at 296 pounds, and he noted the

medical documentation for her weight gains up to the date of the mid-March 2003 hearing.[32]

Although the ALJ identified Johnson's obesity as a severe impairment, she contends that he (1) "did

not include an evaluation of obesity pursuant to Social Security Ruling 02-01p" notwithstanding that

"[t]he allegation that [her] morbid obesity exacerbates her symptoms is consistent with the record

as a whole", and (2) "did not properly consider the impact of [her] morbid obesity in combination

with her other documented medical impairments."[33]

Enacted in 2002 to supersede a 2000 policy guideline on the evaluation of obesity in

disability claims, SSR 02-01p provides this guidance for the court's assessment of the merits of both

contentions:

> We will not make assumptions about the severity or functional effects of obesity
> combined with other impairments. Obesity in combination with another impairment
> may or may not increase the severity or functional limitations of the other
> impairment. We will evaluate each case based on the information in the case record.[34]

---

[32]*See* R. 16, 270; R.17 ("..on August 12, 2002, Dr. Mockler performed an examination noting claimant's morbid obesity continues to be an ongoing problem with her weight up 12 pounds since her last office visit."); R.17, 218 ("On physical examination [by Sam R. Bonner, M.D....on April 1, 2002] her ...height was 61½ inches and her weight was 291 pounds."); R. 17, 19, 229 ("Jody Varghese, M.D. submitted a medical report noting claimant's height of five feet, one inch, weight of 290 pounds...).

[33]*Pl.'s Br.*at 14-15.

[34]*Pl.'s Br.* at 14;  SSR 02-01p, 2002 SSR Lexis 1, at*15.

##### 1.   *Evaluation of Obesity under SSR 02-01p*

####### *(a) Contentions*

Johnson notes correctly the instruction in SSR 02-01p for "an assessment....of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment."  Explained in pertinent part, "obesity can cause limitation of function":

> The functions likely to be limited depend on many factors, including where the excess weight is carried.  An individual may have limitations in any of the exertional functions . . . It may also affect ability to do postural functions . ..  The ability to manipulate may be affected. . . The ability to tolerate extreme heat, humidity, or hazards may also be affected.

> The effects of obesity may not be obvious.  For example, some people with obesity also have sleep apnea.  This can lead to drowsiness and lack of mental clarity during the day. . . .  Individuals with obesity may have problems with the ability to sustain a function over time. .  The combined effects of obesity with other impairments may be greater than might be expected without obesity.  For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.[35]

In support of the ALJ's evaluation, the Commissioner argues that the "thorough decision and review of the medical evidence reflects that he considered her severe impairment of morbid obesity in addition to her other severe impairments, evaluated the medical records and observations of the various medical sources, and reviewed Plaintiff's descriptions of her limitations in evaluating her RFC. . . In light of the evidence of record, the fact that the ALJ's decision does not explicitly discuss his assessment of Plaintiff's obesity on her ability to perform routine movement and necessary

---

[35]SSR 02-01p, 2002 SSR Lexis 1, at*16-17.

17

physical activity within the work environment is not fatal to the decision"[36]

As now explained, the court does not agree with the Commissioner that the ALJ duly considered Johnson's severe impairment of obesity in combination with her other severe impairments of sleep apnea, osteoarthritis, diabetes, hypertension, and history of mitral valve prolapse.

(b)  Analysis

Initially, the court rejects the Commissioner's suggestion of harmless error in the ALJ's failure to state explicitly if and how his RFC finding weighed the effect of her obesity in combination with her other impairments.  SSR 02-01p does not permit the ALJ, or this court on review, to make assumptions about the functional effects of obesity combined with other impairments.  On a record finding severe impairments which have been acknowledged to be exacerbated in the workplace by obesity – e.g., sleep apnea and osteoarthritis – the ALJ is bound to explain whether and how he assessed any evidence that the combination of such impairments would affect adversely Johnson's ability to perform the "routine movement and necessary physical activity" required in her past work or comparable light work.[37]  *See Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990) ("..the combination of all...impairments must also be evaluated with respect to the effect they have on ...ability to fulfill the duties of ...past relevant work, or other work),

---

[36]*Def.'s Br*. at 9-10.

[37]As conceded by the Commissioner, the ALJ does not discuss explicitly the combined effect of these severe impairments on Johnson's RFC for past work or other work.  Because his discussion of her RFC does not incorporate medical records which appear to document such a combined effect, the court may not conclude that the ALJ made this required consideration implicitly simply because his listed findings include:  *"The claimant's medically determinable obesity, osteoarthritis, diabetes hypertension, sleep apnea and history of mitral valve prolapse do not prevent the claimant from performing her past relevant work."*  (R.21, no.9).

citing *Gibson v. Heckler*, 779 F.2d 619 (11ᵗʰ Cir. 1986); *Jones v. Bowen*, 810 F.2d 1001 (11ᵗʰ Cir. 1986); *Hudson v. Heckler*, 755 F.2d 781 (11ᵗʰ Cir. 1985).[38]

Next, the court notes the evidence suggesting that Johnson's obesity in combination with other severe impairments may present functional limitations on her ability to perform the "routine movement and necessary physical activity" for her past work. Already outlined, *supra* is the ALJ's disregard of opinions by Johnson's treating physician, Dr. Mockler, on the disabling effects of her combined impairments. Though the ALJ does report similar opinions by a consultative examiner, Dr. Sam R. Banner, his decision does not reflect any due consideration thereof when he assessed Johnson's functional limitations.

On April 1, 2002, Johnson, then weighing 291 pounds with a height of 61½ inches, "complained [to Dr. Banner] of asthma and associated shortness of breath for three to four years, *joint pain* especially in neck, elbows, low back and knees and swelling in different joints *especially in her knees with difficulty walking or standing"*:

> She demonstrated difficulty getting on and off the examination table due to her pain and obesity. . . Dr. Banner was unable to obtain a lumbar x-ray due to claimant's obesity. Diagnoses were morbid obesity, diabetes mellitus (possibility due to kidney damage), hypertension, asthma and chronic joint pain."[39]

Dr. Banner does not attribute to Johnson any malingering and the ALJ offers no reason either to discredit his evaluation or to consider the reported exertional limitations presented by Johnson's

---

[38]*See also* SSR 02-01p, 2002 SSR LEXIS 1,*18 ("As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations"); *Wilson v. Barnhart*, 284 F.2d 1219, 1224-25 (11ᵗʰ Cir. 2002); *Davis v. Shalala*, 985 F.2d 528, 533 (11ᵗʰ Cir. 1993) ( requiring the ALJ to make specific and well-articulated findings as to the combined effect of all impairments); *McCray v. Massanari*, 175 F.Supp 2d 1329, 1336 (M.D.Ala. 2002).

[39]R.17, 217-221 (emphasis supplied).

morbid obesity in combination with her chronic joint pains and other impairments.

In finding Johnson  not credible with respect to her "allegations of disabling arthritis", the ALJ states:

> [A]ll  diagnostic testing has been normal, i.e., a cervical spine x-ray performed on July 24, 2001 was normal (Exhibit 4F), a right knee x-ray performed on April 1, 2002 showed no arthritic changes and well-maintained joint spaces and pulmonary functioning testing revealed normal expiratory flows and a normal FCV (Exhibit 7F)..."[40]

The radiologist who interpreted Johnson's right-knee x-ray for Dr. Banner also reported, however, "fragmentation of the tibial tuberosity, adding: "if there are clinical symptoms of pain and swelling in this area, then Osgood-Schlatter's disease[41] should be considered."[42]   The ALJ's selective highlighting of this medical report is misleading in light of  Dr. Banner's apparent findings consistent with Johnson's complaints of pain and  "swelling in different joints especially her knees." The "musculo-skeletal" notes for his "review of systems" indicates "[see] chief complaints" while his "General" notes for his "detailed physical examination" of Johnson state succinctly:

> A thirty seven year old obese black female.  Clean and neatly dressed.  She became noticeably fatigued during her PFT studies.

Concerning his physical examination of Johnson's extremities,  Dr. Banner made these notes, *inter*

---

[40]R. 19.

[41]*Tibial tuberosity* is an oval elevation on the anterior surface of the tibia, the shinbone. .  *See Stedman's Medical Dictionary* (27th ed. 2000).  *Osgood-Schlatter Disease* is inflammation of the bone and cartilage at the top of the shin bone.  Major symptoms are pain, swelling, and tenderness at the top of the shin, where the tendon from the kneecap is attached.  *See The Merck Manual of Medical Information* at 1310 (Home ed. 1997).

[42]R. 222.  The  ALJ does reference this impression of fragmented tibial tuberosity in his chronological summary of Johnson's medical records (R. 17 ), but he omits in his credibility assessment for Johnson's RFC any reference to this impression and its impact on her functional capacities for physical exertions.

*alia,* which appear  consistent with her complaints:

> hip extension 0 degrees bilateral . . . knee extension 0 degrees bilateral and knee flexion 90 degrees bilateral [43]

Instead of discussing the medical evidence of the functional limitations likely to confront Johnson at work as a result of the combined effect of her severely impairing obesity and other medically determinable impairments – especially the sleep apnea and osteo-arthritis also found to be severe impairments – the ALJ found her allegations of disability not credible largely because she failed to lose weight:

> The claimant alleges disabling joint pain but continues to gain weight. . . .  Although she has been repeatedly instructed diet and to exercise she had gained 12 pounds on her most recent examination with treating physician Dr. Mockler who noted hr ongoing problem of morbid obesity. [ ] . . . Treating physician Dr. Mockler recommends gastric bypass surgery remarking that the claimant would be an excellent candidate for the surgery.  **\*\*\* The ALJ rejects the assessment by claimant's treating physician Dr. Mockler, as** *claimant has been non-compliant in her instructions to lose weight and exercise and continues to gain weight.* [44]

To the extent the ALJ did not find credible  Johnson's allegations regarding her disabling pain and limitations because he deemed her obesity a self-imposed, unremedied by choice but remediable impairment, this finding is unsupported by substantial evidence and reflects an incorrect interpretation of the applicable law.   The record includes no treating source's prescribed treatment to Johnson for her obesity;  the recommendations that she diet, exercise, lose weight, or consider gastric bypass surgery do not constitute prescribed treatment.[45]  Moreover, the record reveals some

---

[43]R. 217-219.

[44]R. 19-20 (citations to exhibits omitted, emphasis supplied).

[45]See pertinent recommendations by Dr. Mockler and by  Dr. Allen, the attending physician who treated Johnson's acute bronchitis and bronchospasm in March 1999,  at R. 79, 194, 197, 201;
(continued...)

attempt by Johnson to follow these instructions.[46]   The ALJ may not presume that Johnson's obesity

is remediable.  *McCall v. Bowen*, 846 F.2d 1317 (11th Cir. 1988).[47]


# V.  CONCLUSION

As explained in the foregoing Memorandum Opinion, the ALJ's determination that Johnson

has the residual functional capacity to perform her past work disregarded without good cause  her

treating physician's contrary assessment.  Additionally, in assessing Johnson's ability to perform

the routine movement and physical activity demanded for her past work,  the ALJ did not consider

---

[45](...continued)
 *McCall v. Bowen*, 846 F.2d 1317, 1319  (11th Cir. 1988) ("A physician's recommendation to lose weight does not necessarily constitute a prescribed course of treatment."); SSR 02-01p ("The treatment must be prescribed by a treating source...not simply recommended.  A treating source's statement an individual "should" lose weight or has "been advised" to get more exercise is not prescribed treatment.").


[46]At the hearing, Johnson testified that she "had lost–I'm losing, gain" when questioned about her current weight.  (R. 270).  In addition she stated that she goes to the park or she walks up and down her street. (R. 270).  Johnson testified that when she walks at the park for one hour, she may walk from "bench to bench or sometimes [she] stop[s] to sit" for "about 15, 20 minutes", and then resumes walking. (R. 272).  See also R. 190,192 and 243 referencing history of walking for exercise.  *See McCall*, 846 F. 2d at 1319 ("[Claimant's] obesity, of itself, does not justify the conclusion that she has refused treatment nor the consequent denial of disability benefits.").


[47]*See* SSR 02-01, 2002 SSR LEXIS 1, at *25 ("Before failure to follow prescribed treatment for obesity can become an issue in a case, we must first find that the individual is disabled because of obesity or a combination of obesity and another impairment(s) . . . We will rarely use failure to follow prescribed treatment for obesity to deny or cease benefits."); SSR 02-01p, 2002 SSR LEXIS 1, at *28  ("Because of the risks and potential side effects of surgery for obesity, we will not find that an individual has failed to follow prescribed treatment for obesity when the prescribed treatment is surgery") SSR 02-01p, 2002 SSR LEXIS 1, at *26-27  [W]e will not find failure to follow prescribed treatment unless there is clear evidence that treatment would be successful.  The obesity must be expected to improve to the point which the individual would not meet our definition of disability, considering not only the obesity, but any other impairment(s).").

the effect of her  severe impairment of obesity in combination with her other  severe impairments. These errors make his determination of Johnson's non-disability not supported by substantial evidence and correctly applied law.  Accordingly, it is

      **ORDERED** that the decision of the Commissioner is **REVERSED** and that this cause be **REMANDED** to the Commissioner, pursuant to *sentence four* of 42 U.S.C. §405(g) for further proceedings.

      A separate judgment will be entered.

      Done this 26th day of July, 2005.

                                  **/s/ Delores R. Boyd**
                                  DELORES R. BOYD
                                  UNITED STATES MAGISTRATE JUDGE